Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMUEL MARCHESE,<br><br>               Plaintiff,<br><br>    vs.<br><br>BLUEROCK RESIDENTIAL GROWTH REIT, INC., RAMIN KAMFAR, I. BOBBY MAJUMBER, ROMANO TIO, ELIZABETH HARRISON, and KAMAL JAFARNIA,<br><br>               Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Samuel Marchese ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder action against Bluerock Residential Growth REIT, Inc. ("Bluerock" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Blackstone Real Estate Partners IX L.P., through merger vehicles Badger Parent LLC and Badger Merger Sub LLC ("Merger Sub" and

collectively with Parent, "Blackstone") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a December 20, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Blackstone will acquire all the outstanding shares of Bluerock common stock for $24.25 per share in cash. As a result, Bluerock will become an indirect wholly-owned subsidiary of Blackstone.

3.      Thereafter, on February 10, 2022, Blackstone filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly it does not appear that any committee of independent and disinterested directors was created to run the sales process.

5.      In addition, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.      Furthermore, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all

Company equity awards for the merger consideration.

7.      In violation of the Exchange Act Defendants caused to be filed the materially deficient Preliminary Proxy Statement on February 10, 2022 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Bluerock, provided by Bluerock management to the Board and the Board's financial advisors Morgan Stanley & Co. LLC ("Morgan Stanley"),  Duff & Phelps, a Kroll Business Operating as Kroll, LLC ("Duff & Phelps"), BofA Securities, Inc. ("BofA"), and Robert A. Stanger & Company, Inc. ("Stanger"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Morgan Stanley, Duff & Phelps, BofA, and/or Stanger if any, and provide to the Company and the Board.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

9.      Plaintiff is a citizen of New Jersey and, at all times relevant hereto, has been a Bluerock stockholder.

10.      Defendant Bluerock Residential Growth REIT, Inc. is a real estate investment trust that focuses on developing and acquiring a diversified portfolio of institutional-quality highly amenitized live/work/play apartment communities in demographically attractive knowledge economy growth markets to appeal to the renter by choice. Bluerock is incorporated in Maryland and has its principal place of business at 1345 Avenue of the Americas, 32nd Floor, New York,

NY 10105.  Shares of Bluerock common stock are traded on the New York Stock Exchange under the symbol "BRG".

11.     Defendant Ramin Kamfar ("Kamfar") has been a Director of the Company at all relevant times.  In addition, Kamfar serves as the Company's Chief Executive Officer ("CEO") and President.

12.     Defendant I. Bobby Majumber ("Majumber") has been a director of the Company at all relevant times.

13.     Defendant Romano Tio ("Tio") has been a director of the Company at all relevant times.

14.     Defendant Elizabeth Harrison ("Harrison") has been a director of the Company at all relevant times.

15.     Defendant Kamal Jafarnia ("Jafarnia") has been a director of the Company at all relevant times.

16.     Defendants identified in ¶¶ 11 - 15 are collectively referred to as the "Individual Defendants."

17.     Non-Party Merger Sub is a wholly owned subsidiary of Blackstone created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

19.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Bluerock maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

21.     Bluerock Residential Growth REIT, Inc. (NYSE American: BRG) is a real estate investment trust that focuses on developing and acquiring a diversified portfolio of institutional-quality highly amenitized live/work/play apartment communities in demographically attractive knowledge economy growth markets to appeal to the renter by choice. The Company's objective is to generate value through off-market/relationship-based transactions and, at the asset level, through value-add improvements to properties and to operations.

22.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the September 30, 2021 press release announcing its 2022 Q3 financial results, the Company highlighted that rental revenues grew 2.3% to $49.8 million from $48.7 million in the prior year period. Additionally, property Net Operating Income ("NOI") increased 5.3% to $30.6 million from $29.1 million in the prior year period. Lastly, same store revenues grew 7.7% and same store NOI increased 9.2%, as compared to the prior year period.

23.     Speaking on the positive results, CEO Defendant Kamfar said, "The accelerated improvement in lease growth, same store revenue and NOI growth continues to validate our strategy focusing on building a highly amenitized Class A affordable first-ring suburban portfolio in knowledge economy growth markets," "In addition, we increased our investment pace throughout the quarter and expect it to carryforward into the end of the year. We also sold three

investments at attractive cap rates below third-party NAV estimates which generated almost $100 million in net proceeds and will produce solid returns for shareholders upon capital reinvestment."

24.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Bluerock.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

25.     Despite this upward trajectory, the Individual Defendants have caused Bluerock to enter into the Proposed Transaction without providing requisite information to Bluerock stockholders such as Plaintiff.

***The Flawed Sales Process***

26.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

27.     Notably, the Preliminary Proxy Statement is silent as to whether any committee of composed of independent and disinterested directors was created to run the sales process.

28.     Moreover, the Preliminary Proxy Statement fails to explain why the engagement of no less than **four** financial advisors was necessary, especially given that the Preliminary Proxy Statement reveals that the payments owed to three of the advisors for their services related to the Proposed Transaction is significant.

29.     In addition, the Preliminary Proxy Statement is nearly completely silent as to the advisor BofA, providing no information whatsoever regarding BofA's engagement other than that it was selected by the Company to be a financial advisor.  Notably, the Preliminary Proxy Statement should provide information regarding BofA's specific role, provide the analyses it provided to the Board, and provide the specific amount of compensation owed to or paid by the Board.

30.     Additionally, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Blackstone, whether this

agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

31.    It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner

**The Proposed Transaction**

32.    On December 20, 2021, Bluerock and Blackstone issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**New York, NY (December 20, 2021) –** Bluerock Residential Growth REIT, Inc. (NYSE American: BRG) (the "Company") today announced that it has entered into a definitive agreement with affiliates of Blackstone Real Estate ("Blackstone") under which Blackstone will acquire all outstanding shares of common stock of BRG for $24.25 per share in an all-cash transaction valued at $3.6 billion (the "Acquisition").

Under the terms of the agreement, Blackstone will acquire 30 multifamily properties comprising approximately 11,000 units as well as a loan book secured by 24 multifamily assets. The properties consist of high-quality garden-style assets with significant green space and resort-style amenities, built, on average, in 2000. The majority of the properties are located in Atlanta, Phoenix, Orlando, Denver and Austin.

Prior to the Acquisition, the Company separately intends to spin off its single-family rental business to its shareholders (the "Spin-Off" and together with the Acquisition, the "Transaction") through the taxable distribution to shareholders of all of the outstanding shares of common stock of a newly formed real estate investment trust named Bluerock Homes Trust, Inc. ("BHOM"), which will be externally managed by an affiliate of Bluerock Real Estate. BHOM will own interests in approximately 3,400 homes, including 2,000 through preferred/mezzanine investments, located in fast growing, high quality of life and knowledge economy markets across the United States. The Company's shareholders will receive shares of BHOM, with a current implied Net Asset Value estimated at $5.60 (based on the midpoint of the valuation range provided by Duff & Phelps, independent financial advisor to the Company's board of directors), for each share of Company common stock. There can be no assurance that the trading price upon a listing of BHOM will be equal to or greater than this estimated NAV.

The Transaction has been unanimously approved by the Company's board of directors and the Acquisition, excluding the value of BHOM, represents a premium of approximately 124% over the unaffected closing stock price on September 15, 2021, the date prior to a media article reporting that the Company was exploring strategic options including a sale.

"We are very proud to enter into a transaction that delivers tremendous value to our shareholders. We believe the substantial premium to our historic trading price is a testament to our success in building a best-in-class institutional-quality multifamily apartment portfolio in our attractive knowledge-economy target markets, along with the robust process run by the board of directors and management to secure maximum value for our shareholders," said Ramin Kamfar, Company Chairman and CEO.

Asim Hamid, Senior Managing Director at Blackstone Real Estate, said, "Bluerock's portfolio consists of high-quality multifamily properties in markets across the U.S. experiencing some of the strongest fundamentals. We look forward to bringing our best-in-class management to these properties to ensure they continue to be operated at the highest standards for the benefit of tenants and the surrounding communities."

Completion of the Acquisition, which is currently expected to occur in the second quarter of 2022, is contingent upon consummation of the Spin-Off, as well as customary closing conditions, including the approval of the Company's shareholders, who will vote on the transaction at a special meeting on a date to be announced. The Acquisition is not contingent on receipt of financing by Blackstone.

Most members of the Company's senior management, along with certain entities related to them, have agreed to retain their interests in the Company's operating partnership, which will hold the assets related to the single-family rental business upon completion of the Spin-Off, rather than receiving cash consideration.

*Potential Conflicts of Interest*

33.     The breakdown of the benefits of the deal indicate that Bluerock insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Bluerock.

34.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed

Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, while the Preliminary Proxy Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for:

| Name of Beneficial Owner | Title of Class of Securities Owned | Amount and Nature of Beneficial Ownership | Percent of Class[7] | Amount of Beneficial Ownership | Percent of Common Stock[9] |
|---|---|---|---|---|---|
| *Executive Officers and Directors:[1][7]* | | | | | |
| R. Ramin Kamfar | Class A Common Stock | 26,241 | * | 70,242 | * |
| | Class C Common Stock | 41,979 | 54.80% | | |
| | Common Units[3] | 1,956 | * | | |
| | LTIP Units[2][3] | 66 | * | | |
| Jordan B. Ruddy | Class A Common Stock | 14,563 | * | 76,896 | * |
| | Class C Common Stock | 8,670 | 11.32% | | |
| | Common Units[5] | 20,284 | * | | |
| | LTIP Units[4][5] | 33,379 | 1.05% | | |
| James G. Babb | Class A Common Stock | 11,980 | * | 945,972 | 2.51% |
| | Class C Common Stock | 10,916 | 14.25% | | |
| | Common Units | 633,250 | 10.04% | | |
| | LTIP Units[4] | 289,826 | 9.15% | | |
| Ryan S. MacDonald | Class C Common Stock | 2,729 | 3.56% | 414,715 | 1.10% |
| | Common Units | 167,289 | 2.65% | | |
| | LTIP Units[4] | 244,697 | 7.72% | | |
| Christopher J. Vohs | Class A Common Stock | 2,575 | * | 66,824 | * |
| | LTIP Units[4] | 64,249 | 2.03% | | |
| Michael L. Konig | Class A Common Stock | 2,570 | * | 729,317 | 1.94% |
| | Class C Common Stock | 8,670 | 11.32% | | |
| | Common Units[6] | 424,845 | 6.73% | | |
| | LTIP Units[4] | 293,232 | 9.25% | | |
| Elizabeth Harrison, Independent Director | LTIP Units | 28,054 | * | 28,054 | * |
| Kamal Jafarnia, Independent Director | LTIP Units | 20,982 | * | 20,982 | * |
| I. Bobby Majumder, Independent Director | Class A Common Stock | 14,225 | * | 47,877 | * |
| | LTIP Units | 33,652 | 1.06% | | |
| Romano Tio, Independent Director | Class A Common Stock | 27,244 | * | 60,896 | * |
| | LTIP Units | 33,652 | 1.06% | | |
| All named executive officers and Directors as a Group[4][7] | | 2,461,775 | 6.54% | 2,461,775 | 6.54% |
| *5% Stockholders:* | | | | | |
| AllianceBernstein L.P.[8] 1345 Avenue of the Americas New York, NY 10105 | Class A Common Stock | 1,624,496 | 5.79% | N/A | N/A |

35.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably while Preliminary Proxy Statement provide the following it fails to indicate the exact number of equity awards owned by each insider:

| Named Executive Officer (1) | Cash ($)(1) | Equity ($)(2) | Total ($) |
|---|---|---|---|
| R. Ramin Kamfar | 4,404,103 | 1,921,106 | 6,325,209 |
| Jordan B. Ruddy | 2,599,751 | 1,446,729 | 4,046,480 |
| James G. Babb, III | 2,287,049 | 2,674,204 | 4,961,253 |
| Ryan S. MacDonald | 3,177,627 | 4,477,402 | 7,655,029 |
| Christopher J. Vohs | 1,472,635 | 965,928 | 2,438,563 |
| Michael L. Konig | 2,263,821 | 3,518,256 | 5,782,077 |

36.     Moreover, certain employment agreements with certain Bluerock executives, entitle such executives to severance packages should their employment be terminated under certain circumstances, however the Preliminary Proxy Statement fails to provide the specific amount of consideration that these payouts will entail.

37.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

38.     Thus, while the Proposed Transaction is not in the best interests of Bluerock, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

### The Materially Misleading and/or Incomplete Preliminary Proxy Statement

39.     On February 10, 2022, the Bluerock Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange

Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

40.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

    a.  Whether a committee of disinterested and independent directors was created to run the sales process, and

       i.  If not, the specific reasons why;

       ii.  If such a committee was created, its membership and specific powers;

    b.  Adequate reasoning as to why multiple financial advisors were engaged by the Company;

    c.  Specific information regarding BofA's engagement as a financial advisor, including its specific role, specific analyses performed and provided to the Board, and the amount of consideration paid or owed to BofA relating to these services;

    d.  Whether the confidentiality agreements entered into by the Company with Blackstone differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

    e.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Blackstone, would fall away; and

f.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Bluerock's Financial Projections*

41.  The Preliminary Proxy Statement fails to provide material information concerning financial projections for Bluerock provided by Bluerock management to the Board and its financial advisors and relied upon by its financial advisors in their analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

42.  Notably the Preliminary Proxy Statement reveals that as part of its analyses, Morgan Stanley reviewed, "certain financial projections prepared by the management of the Company."

43.  Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Bluerock management provided to the Board and its financial advisors.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007)

44.  With regard to the *Company Financial Projections* prepared by Bluerock Management, the Preliminary Proxy Statement fails to disclose material line items for the

following metrics:

    a.   EBITDA, including all underlying necessary metrics, adjustments, and assumptions;

    b.   Additionally the Preliminary Proxy Statement fails to provide the specific inputs, assumptions, or bases for all assumptions as applied to the projections.

45.    The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

46.    This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

47.    Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the financial advisors' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Morgan Stanley*

48.    In the Preliminary Proxy Statement, Morgan Stanley describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

49.    With respect to the *Comparable Public Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific metrics for each compared company.

50.    With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy

Statement fails to disclose the following:

    a. The projected unlevered free cash flows for the Company from September 30, 2022 through the end of 2026 which were utilized;

    b. The specific inputs and assumptions used to determine the utilized illustrative discount rate range of 5.4% to 5.8%;

    c. The Company's weighted average cost of capital;

    d. The Company's current weighted average interest rate;

    e. The Company's current indebtedness;

    f. The Company's cost of debt;

    g. The terminal enterprise values for the Company calculated

    h. The specific inputs and assumptions used to determine the utilized implied exit capitalization rates rate range of 5.0% to 5.5%;

    i. The Company's implied capitalization rate as of December 17, 2021; and

    j. The Company's five-year historical average implied capitalization rate as of December 17, 2021.

    51. With respect to the *Net Asset Value Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a. Company management's estimates of asset value as of September 30, 2021;

    b. The specific inputs and assumptions used to determine the utilized range of capitalization rates of 3.6% to 5.8%;

    c. The utilized market-specific capitalization rates per Green Street;

    d. The estimated value of the Company's cash, restricted cash, amounts due from affiliates and accounts receivable, prepaids and other, and deducted property-level debt, accounts payable, other accrued liabilities, amounts due to affiliates, distributions payable, joint venture partner interests and promotes payable and the liquidation value of preferred equity from the aggregate value of the Company's assets; and

   e. The number of fully diluted shares of Common Stock outstanding as of September 30, 2021.

52. With respect to the *Premiums Paid Analysis*, the Preliminary Proxy Statement fails to disclose the following:

   a. The specific metrics for each precedent transaction;

   b. The date on which each precedent transaction closed; and

   c. The value of each precedent transaction analyzed.

53. With respect to the *Private Buyer Analysis Analysis*, the Preliminary Proxy Statement fails to disclose the following:

   a. The specific inputs and assumptions used to determine the utilized September 30, 2026 exit date;

   b. The specific inputs and assumptions used to determine the utilized range of market capitalization rates of 3.9% to 4.4%;

   c. The specific inputs and assumptions used to determine the utilized assumptions that

     i. There was a five year hold period;

     ii. That the potential impact of any property tax resets was disregarded;

     iii. That the buyer incurs new CMBS debt in connection with the transaction in an aggregate principal amount resulting in a loan-to-value ratio of 60%; and

     iv. That the buyer is targeting a levered internal rate of return of 10% to 12%.

54. With respect to the *Research Analyst Price Targets and NAV Targets*, the Preliminary Proxy Statement fails to disclose the following:

   a. The specific equity research price targets utilized including the identity of the equity research firm that generated them; and

b.  The specific equity research NAV targets utilized including the identity of the equity research firm that generated them.

55.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

56.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Bluerock stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Duff & Phelps*

57.    In the Preliminary Proxy Statement, Duff & Phelps describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

58.    With respect to the *Direct Capitalization Analysis for Stabilized Properties* Analysis, the Preliminary Proxy Statement fails to disclose the follow:

a.  The specific stabilized NOI for each property analyzed and the specific inputs and assumptions used to determine the same;

b.  The specific range of appropriate capitalization rates utilized and the inputs and assumptions used to determine the same;

c.  The results of this analysis.

59.    With respect to the *Liquidation Valuation* Analysis, the Preliminary Proxy Statement fails to disclose the follow:

a.   The results of this analysis.

60.   With respect to the *Letter of Intent and Broker Price Opinion Valuation Analyses for Miscellaneous Properties* Analysis, the Preliminary Proxy Statement fails to disclose the follow:

a.   The results of this analysis

61.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

62.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.   Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Bluerock stockholder.   As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Stanger*

63.   In the Preliminary Proxy Statement, Stanger describes its fairness opinion and the various valuation analyses performed to render such opinion.   However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.   Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

64.   With respect to the Analyses performed by Stanger, the Preliminary Proxy Statement fails to disclose the following:

a.   The specific metrics for each precedent transaction utilized;

b.   The date on which each precedent transaction closed;

c.   The value of each precedent transaction analyzed; and

d.   The specific numerical results of the analysis.

65.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

66.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Bluerock stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

67.     Plaintiff repeats all previous allegations as if set forth in full herein.

68.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

69.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

70.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or

oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

71.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

72.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

73.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

74.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

#### (Against all Individual Defendants)

75.     Plaintiff repeats all previous allegations as if set forth in full herein.

76.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations

and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

77.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

78.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Bluerock's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

79.     The Individual Defendants acted as controlling persons of Bluerock within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Bluerock to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Bluerock and all of its employees.  As alleged above, Bluerock is a primary violator of Section 14 of the Exchange Act

and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.   Enjoining the Proposed Transaction;

B.   In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.   Directing the Individual Defendants to comply with the Exchange Act to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.   Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 14, 2022

**BRODSKY & SMITH**

By: _____

Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*